Argued and submitted September 24, 2021, resubmitted January 25; decision of Court of Appeals affirmed, judgment of circuit court reversed, and case remanded to circuit court for further proceedings May 12, 2022

## STATE OF OREGON,
*Petitioner on Review,*

*v.*

## JONATHAN WILLIAM RUSEN,
*Respondent on Review.*

### (CC 17CR12207) (CA A168201) (SC S068295)

509 P3d 628

Pursuant to a plea agreement, defendant pleaded no contest to four counts of second-degree sexual abuse, and the state recommended a downward dispositional sentence of probation. The parties agreed that, if the trial court revoked defendant's probation sentences, the trial court would have the authority to impose consecutive terms of incarceration as probation revocation sanctions. Defendant reserved the right, however, to argue that any probation revocation sanctions should be run concurrently. The trial court followed that recommendation and imposed concurrent terms of probation. The trial court later revoked defendant's probation based on a single violation and sentenced defendant to consecutive terms of incarceration for each of the four counts. Defendant appealed, arguing that the consecutive sentences imposed by the trial court violated OAR 213-012-0040(2)(a), which requires concurrent probation revocation sanctions where multiple terms of probation are revoked for a single violation. The state argued that defendant's sentence was not reviewable under ORS 138.105(9), which bars appellate courts from reviewing "any part of a sentence resulting from a stipulated sentencing agreement between the state and the defendant." The state further argued that the trial court had authority to impose consecutive probation revocation sanctions under ORS 137.123(2), which authorizes consecutive sentences for defendants whose multiple offenses "do not arise from the same continuous and uninterrupted course of conduct." The Court of Appeals reversed. *Held*: (1) Defendant's sentence was reviewable because ORS 138.105(9) does not bar review of challenges to "part of a sentence" when the parties reserved the right to make competing arguments regarding what the court should decide with respect to that part of the sentence; (2) the consecutive sentences imposed by the trial court violated OAR 213-012-0040(2)(a) and were not authorized by ORS 137.123(2), which applies only to the initial sentencing following conviction.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

On review from the Court of Appeals.\*

_____

\* Appeal from Linn County Circuit Court, Thomas McHill, Judge. 307 Or App 759, 479 P3d 318 (2020).

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs were Ellen Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Anne Fujita Munsey, Deputy Defender, Salem, argued the cause and filed the brief for respondent on review. Also on the brief was Ernest G. Lannet, Chief Deputy Defender, Office of Public Defense Services.

Before Walters, Chief Justice, and Balmer, Flynn, Duncan, Nelson, Garrett, and DeHoog, Justices.**

FLYNN, J.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

_____

** Nakamoto, J., retired December 31, 2021, and did not participate in the decision of this case.

**FLYNN, J.**

In the criminal case before us, defendant challenges the trial court's imposition of consecutive terms of incarceration upon revoking defendant's probation. Defendant had been serving the sentence of probation pursuant to a plea agreement and had stipulated that, if the court revoked his probation, the court could impose consecutive terms of incarceration as sanctions. Defendant had reserved the right, however, to argue that any probation revocation sanctions should be run concurrently. The first question this case presents is whether defendant is barred from obtaining appellate review by ORS 138.105(9), which provides that an "appellate court has no authority to review any part of a sentence resulting from a stipulated sentencing agreement between the state and the defendant." The second question, on the merits, is how to resolve an apparent conflict between ORS 137.123(2), which generally authorizes consecutive sentences for defendants—like this defendant—whose multiple offenses "do not arise from the same continuous and uninterrupted course of conduct," and OAR 213-012-0040(2)(a), a sentencing guideline that restricts the ability of sentencing judges to impose consecutive incarceration sanctions upon revoking probation.

The Court of Appeals concluded that defendant's challenge to the revocation sanction was reviewable and, on the merits, that the trial court lacked authority in this case to impose consecutive terms of incarceration following revocation of defendant's probation. We allowed the state's petition for review and now affirm the decision of the Court of Appeals on both questions.

On the procedural question, we conclude that the legislature did not intend ORS 138.105(9) to bar review of challenges to "part of a sentence" when the parties reserved the right to make competing arguments regarding what the court should decide with respect to that part of the sentence. Accordingly, petitioner's challenge to the court's decision to impose consecutive terms of incarceration is reviewable. On the merits, we conclude that ORS 137.123(2) applies to initial sentencing and, therefore, is compatible with OAR 213-012-0040(2)(a), which applies when a court revokes probation

and requires the court to impose concurrent incarceration terms where, as here, probation is revoked based on a single violation. We therefore affirm the decision of the Court of Appeals, reverse the judgment of the trial court, and remand for further proceedings.

## I.  BACKGROUND

In 2017, defendant pleaded no contest to four counts of second-degree sexual abuse involving the same minor victim. As part of the plea agreement, the state agreed to dismiss six counts charging defendant with other sexual offenses involving the same victim. The plea agreement specified that the four counts to which defendant pleaded guilty were committed on four different dates—*i.e.*, not "the same continuous and uninterrupted course of conduct," ORS 137.123(2)—and specified the applicable grid block for each offense under the Oregon Sentencing Guidelines (guidelines).[1]

Although each of the specified grid blocks carried a presumptive sentence of incarceration that could amount to a total of 122 months if run consecutively, the parties agreed that the state would recommend that the court depart from the presumptive sentences and impose, instead, three years of supervised probation. At the sentencing hearing, defense counsel also advised the court that, "if the Court revokes probation," defendant was "acknowledg[ing] *** that the State could ask for up to 122 months, but [] defendant would *** be free to ask that [the sentences] run concurrently." The prosecutor confirmed the agreement, explaining that, in the event of revocation, "[i]t would be open sentencing within those parameters." The court characterized that agreement to mean, "in the event of revocation on the downward departure[,] that the Court could impose consecutive sentences," and the parties confirmed that characterization. The court then followed the parties' recommendation

---

[1] We have previously explained that the guidelines include a "grid" used to determine the presumptive sentence for an offense. To use the grid, the court calculates and then locates the defendant's "criminal history score" on the horizontal axis of the grid and the "crime seriousness score" for the offense on the vertical axis, and "the gridblock where those axes intersect contains the presumptive sentence for the defendant's crime." *State v. Dulfu*, 363 Or 647, 652, 426 P3d 641 (2018).

and sentenced defendant to supervised probation on each count, with the probation terms to be served concurrently. The judgment of conviction included a term memorializing the agreement regarding revocation: "The parties agree that[,] should this probation be revoked, the convictions on each count are eligible for consecutive sentences to be imposed."

The conditions of probation included that defendant have no contact with the victim, except as specified in writing by the court or defendant's probation officer. Less than a year later, however, the state alleged that defendant had violated the terms of his probation by having sexual intercourse with the same victim. Defendant pleaded guilty to a new charge of second-degree sexual abuse and conceded that his contact with the victim had violated the terms of probation. In light of defendant's concession, the probation revocation hearing largely focused on an appropriate sanction.

The state asked the court to impose consecutive terms of incarceration, noting the parties' agreement that, in the event that defendant's probation were revoked, the court could impose consecutive sentences. Defendant emphasized, however, that he had reserved the right to argue at the time of revocation that the court should not impose consecutive sentences. He characterized the agreement as merely acknowledging that, under certain circumstances, the sentencing guidelines would authorize consecutive probation revocation sanctions, such as, for example, "if more than one term of probationary supervision is revoked for separate supervision violations." OAR 213-012-0040(2)(b). But, because defendant's multiple terms of probationary supervision were revoked for a single supervision violation, defendant argued that the sentencing guidelines required the trial court to impose the probation revocation sanctions concurrently.[2] *See* OAR 213-012-0040(2)(a) ("If more than one term of probationary supervision is revoked for a single supervision violation, the sentencing judge shall impose the incarceration sanctions concurrently.").

---

[2] On review, the state does not argue that the trial court revoked defendant's multiple terms of probation based on more than one violation.

The trial court concluded that the parties' agreement that the court could impose consecutive probation revocation sanctions meant that the court did not need to consider whether the guidelines authorized consecutive sentences under the circumstances. The court then announced that it was revoking defendant's probation on all counts, imposing a term of incarceration for each count, and ordering the incarceration terms to be served consecutively—for a total of 106 months' incarceration.

Defendant appealed the revocation judgment and assigned error to the trial court's imposition of consecutive terms of incarceration. *State v. Rusen*, 307 Or App 759, 760, 479 P3d 318 (2020). Although the state contended that the consecutive incarceration terms were the product of "a stipulated sentencing agreement," and thus that ORS 138.105(9) precluded review, the Court of Appeals rejected that argument. *Id.* at 760-61. The court reasoned that the parties' agreement as to the issue of consecutive sentences was not a "stipulated sentencing agreement" because it was not "specific"—rather, it was an agreement that, "upon revocation, the state could argue for consecutive sentences and defendant could argue for concurrent ones." *Id.* at 761.

On the merits, the Court of Appeals concluded that, under OAR 213-012-0040(2)(a), the trial court erred in imposing consecutive terms of incarceration as probation revocation sanctions for a single violation of probation. In reaching that result, the court rejected the state's argument that the trial court had authority to impose consecutive sanctions under ORS 137.123(2). The court resolved the apparent conflict between the provisions by holding that ORS 137.123(2) governs a trial court's authority to impose consecutive terms of incarceration as an initial sentence, while OAR 213-012-0040(2) governs the trial court's authority to impose consecutive terms of incarceration as a probation revocation sanction. *Id.* at 761-62.

The state petitioned this court for review, which we allowed. *State v. Rusen*, 368 Or 168, 486 P3d 795 (2021).

## II. ANALYSIS

The state contends that the decision of the Court of Appeals is wrong for two alternative reasons. First, the

state argues that defendant's consecutive incarceration sanctions are the product of "a stipulated sentencing agreement" and, thus, that ORS 138.105(9) makes the sentences unreviewable. Second, the state argues that the trial court had authority to impose the consecutive terms of incarceration under ORS 137.123(2), because defendant's underlying offenses did "not arise from the same continuous and uninterrupted course of conduct," and that OAR 213-012-0040(2) does not limit that authority. We turn first to the issue of reviewability. *See State v. Kephart*, 320 Or 433, 435 n 2, 887 P2d 774 (1994) (noting that, before reviewing whether the trial court failed to comply with the law in imposing a sentence, this court will "determine whether review is permitted").

## A.  *Bar on Reviewability*

### 1.  *Framework*

The authority of the Court of Appeals, and of this court, to review defendant's sentence is governed by ORS 138.105. *See* ORS 138.105(1) ("On appeal by a defendant, the appellate court has authority to review the judgment or order being appealed, subject to the provisions of this section."). That statute authorizes appellate courts to review a sentence "to determine whether the trial court failed to comply with requirements of law in imposing or failing to impose a sentence." ORS 135.105(7).

The statutory authority to review sentences, however, is subject to exceptions. *Id.* At issue here is the exception set out in ORS 138.105(9), which provides:

"The appellate court has no authority to review any part of a sentence resulting from a stipulated sentencing agreement between the state and the defendant."

As set out above, the parties had agreed that the court "could impose consecutive sentences" in the event that it revoked defendant's probation, although defendant reserved the right to argue against consecutive sentences. According to the state, that agreement was a "stipulated sentencing agreement" within the meaning of ORS 138.105(9), and bars review of defendant's challenge to the consecutive terms of incarceration. Defendant responds with multiple

alternative arguments for why ORS 138.105(9) does not pre-clude his challenge to the consecutive terms of incarcera-tion, including that—as the Court of Appeals reasoned—the sentence did not result from a "stipulated sentencing agree-ment" because the parties' agreement left defendant free to argue that the court should not impose consecutive terms of incarceration.[3]

The dispute in this case, therefore, centers on the meaning of the phrase "any part of a sentence resulting from a stipulated sentencing agreement," as used in ORS 138.105(9). As with all questions of statutory construction, our "paramount goal" is to discern the intent of the legis-lature, and we pursue that goal by employing the analyt-ical framework described in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), and modified in *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009). Within that framework, we focus on the text and context of the stat-ute, and we consider legislative history that "appears useful to the court's analysis." *Id.* at 172.

2.  *Text and context*

The text on which we focus here is the product of multiple legislative enactments. Although the legislature enacted ORS 138.105(9) in 2017, the legislature enacted the first iteration of that bar to reviewability in 1989, as part of statutory changes to implement the sentencing guidelines. Or Laws 1989, ch 790, § 21(2)(d), *codified as former* ORS 138.222(2)(d) (1989). In that first iteration, the provision barred review of "[a]ny sentence resulting from an agree-ment between the state and the defendant which the sen-tencing court approves on the record." *Id.* The legislature amended the reviewability bar in 1993 so that—as now—it precluded appellate review of sentences "resulting from a stipulated sentencing agreement." *See* Or Laws 1993, ch 698, § 1(2)(d), *codified as former* ORS 138.222(2)(d) (1993) (pre-cluding appellate review of "[a]ny sentence resulting from

---

[3] In addition to his statutory construction arguments, defendant contends that the plea agreement was not a waiver of his right to challenge a sentence in violation of the guidelines rule, and he argues that denying appellate review of his sentences would violate state and federal constitutional provisions. Because we agree with defendant that his sentence does not result from a "stipulated sen-tencing agreement," we do not address his other two arguments.

a stipulated sentencing agreement between the state and the defendant which the sentencing court approves on the record"). Finally, the legislature in 2017 added the phrase "any part of a sentence." Or Laws 2017, ch 529, § 13(9). We have previously construed both prior versions of the statute, and our understanding of ORS 138.105(9) is significantly informed by our prior constructions of its predecessors. *See State v. Cloutier*, 351 Or 68, 100, 261 P3d 1234 (2011) ("Our analysis of [the statute] is also informed by this court's prior construction of that statute or its predecessors."); *see also Lindell v. Kalugin*, 353 Or 338, 349, 297 P3d 1266 (2013) ("Case law existing at the time of the adoption" of the rule or statute "forms a part of the context.").

This court first construed the reviewability bar in *State v. Adams*, 315 Or 359, 367, 847 P2d 397 (1993), in which we held that *former* ORS 138.222(2)(d) (1989)—when applicable—precluded review of a component term of a sentence to which the parties had specifically agreed. In *Adams*, the defendant and the state had stipulated to a specific grid block classification and to a sentence of 84 months' incarceration, which fell within the presumptive range for the stipulated grid block. *Id.* at 363-64. The trial court imposed a sentence that carried out those stipulations. *Id.* at 363. Despite the stipulation, the defendant argued on appeal that his criminal history score required the court to place him in a lower grid block than that to which the parties had stipulated. *Id.* at 364. In an attempt to get around the reviewability bar of *former* ORS 138.222(2)(d) (1989), the defendant argued that the provision should be understood to preclude only challenges to the length of a sentence. *Id.* at 365. But this court in *Adams* rejected the defendant's proposed reading of the statute and concluded, instead, that the statute precluded review of the trial court's decision to use the grid block classification to which the parties had expressly stipulated. *Id.* at 366-67. Among other rationales, the court explained that the defendant's proposed reading of the statute would "create an anomaly" in that the defendant would receive the "full benefit" of his agreement with the state ("the opportunity to plead to" a lesser offense), "while the state would be deprived of its side of the bargain (*** the certainty of a stipulated sentence without the

need to prove that a departure sentence was warranted)." *Id.*

Our decision in *Adams* did not address the standards for assessing *whether* a defendant has entered into "an agreement" that would trigger the bar to review—then set out in *former* ORS 138.222(2)(d) (1989). The defendant had not denied that he had entered "an agreement" to which the bar applied, and, therefore, *Adams* addressed only the nature or scope of the applicable bar. By the time that this court addressed the question *whether* an "agreement" is sufficient to trigger the bar, the 1993 Legislative Assembly had replaced "an agreement" with the current wording, which precludes appellate review of a sentence resulting from "a stipulated sentencing agreement." *See* Or Laws 1993, ch 698, § 1(2)(d) (making that change to *former* ORS 138.222(2)(d)); ORS 138.105(9) (setting out current wording, under renumbered statute).

This court considered the meaning of the new term "stipulated sentencing agreement" in *Kephart*, 320 Or 433, and that decision is central to resolving the parties' dispute in this case. The defendant in *Kephart* entered into a plea agreement with the state under which the defendant pleaded guilty to numerous felony charges, all but one of which were governed by the sentencing guidelines. *Id.* at 436-38. The parties did not stipulate to grid blocks or to any other aspect of the sentences for the individual offenses, but they agreed that the parties would "seek and obtain approval by the Court to limit the defendant's exposure at sentencing" to a total sentence of no more than 50 years for all offenses. *Id.* at 437. The trial court imposed a sentence that totaled exactly 50 years' incarceration for all "guilty" counts combined. *Id.* at 439. The court had reached that total by using the guidelines grid block method to determine the presumptive sentence for each offense, but the court had calculated the applicable grid blocks for each offense through a "then-controversial practice" of using some of the new convictions to increase the defendant's criminal history score. *Id.* The Court of Appeals held that the sentence was not reviewable. *Id.*

On review, this court first concluded in *Kephart* that the reviewability question was governed by the 1993 version

of *former* ORS 138.222(2)(d), which made the bar applicable only to a "stipulated sentencing agreement." *Id*. at 440. This court then concluded that the defendant's agreement with the state to the maximum total sentence had not constituted a "stipulated sentencing agreement," and therefore did not preclude review of his challenge to the sentence. *Id*. at 447. The opinion explains that, although the term "stipulated sentencing agreement" is not statutorily defined, the statutory text and context indicate that the legislature intended to define "a narrower class of agreements." *Id*. at 441.

For context, the court looked to another statute—ORS 135.407—which "describes several ways in which the state and a defendant may 'stipulate' to a sentence" that is subject to the guidelines. *Id*. at 441-42. As this court explained, ORS 135.407 specifies that the parties "may stipulate to" various terms that make up a guidelines sentence: The parties may stipulate to a defendant's grid block classification "for the purpose of obtaining the presumptive sentence under that grid block" (ORS 135.407(2)); the parties may stipulate to "a specific sentence within the presumptive range" for the grid block classification (ORS 135.407(4)); and the parties may stipulate to a "sentence outside the presumptive sentence range"—a so-called "departure sentence" (ORS 135.407(5)).[4] *Kephart*, 320 Or at 442. As a result,

---

[4] ORS 135.407 has not been amended since enacted in 1989. In its entirety, ORS 135.407 provides:

"In cases arising from felonies committed on or after November 1, 1989:

"(1) Whenever a plea agreement is presented to the sentencing judge, the defendant's criminal history classification, as set forth in the rules of the Oregon Criminal Justice Commission, shall be accurately represented to the trial judge in the plea agreement. If a controversy exists as to whether a prior conviction or juvenile adjudication should be included in the defendant's criminal history, or as to its classification under rules of the Oregon Criminal Justice Commission, the district attorney and the defendant may stipulate to the inclusion, exclusion or classification of the conviction or adjudication as part of the plea agreement subject to approval of the court.

"(2) The district attorney and the defendant may stipulate to the grid block classification within the sentencing guidelines grid established by the rules of the Oregon Criminal Justice Commission that will provide the presumptive sentence range for the offender. The sentencing judge may accept the stipulated classification and impose the presumptive sentence provided in the rules of the Oregon Criminal Justice Commission for that grid block.

"(3) If the district attorney and the defendant stipulate to a grid block classification within the sentencing guidelines grid, and the sentencing

the court concluded that the statutory context, "including the examples of stipulated sentencing agreements in ORS 135.407, confirms that the legislature intended to narrow the class of agreements that would preclude judicial review." *Id.* at 442.

The court in *Kephart* also analyzed the legislative history of the bill that had proposed the amendment to replace "agreement" with "stipulated sentencing agreement" in *former* ORS 138.222(2)(d). From the legislative history, this court concluded "that the proponents intended the amendment to permit appellate review of 'illegal' sentences, unless the defendant agreed to that sentence ahead of time as part of a 'stipulated sentencing agreement.'" *Id.* at 445 (quoting Tape Recording, Senate Committee on Judiciary, HB 2256, July 27, 1993, Tape 232, Side B (statement of Ross Shepard)). The court explained that the bill to amend the statute was proposed in "the waning days of the 1993 legislative session" in response to a group of decisions that the Court of Appeals had issued early in 1993. *Id.* at 443; *see also id.* at 443-46 (citing and discussing *State v. Johnston*, 120 Or App 165, 851 P2d 1156 (1993), *State v. Kilborn*, 120 Or App 462, 852 P2d 935 (1993), and *State v. Tanner*, 121 Or App 104, 854 P2d 941 (1993)). Proponents of the bill from both the Oregon Criminal Defense Lawyers Association and the Oregon District Attorneys Association explained that a "problem" had "recently arisen in a series of appellate cases" in which the Court of Appeals had broadly interpreted the kind of "agreement" that will bar reviewability, that the interpretation would cause lawyers to avoid plea

judge accepts the stipulated classification but imposes a sentence other than the presumptive sentence provided by rules of the Oregon Criminal Justice Commission, the sentence is a departure sentence and is subject to rules of the Oregon Criminal Justice Commission related to departures.

"(4) The district attorney and defendant may stipulate to a specific sentence within the presumptive range provided by rules of the Oregon Criminal Justice Commission for the stipulated offender classification. If the sentencing judge accepts the plea agreement, the judge shall impose the stipulated sentence.

"(5) The district attorney and the defendant may stipulate to a sentence outside the presumptive sentence range for a stipulated grid block classification. The sentencing judge may accept an agreement for an optional probationary sentence or a departure sentence as provided in rules of the Oregon Criminal Justice Commission."

agreements, and that the bill was intended to "reverse" that "broad interpretation of the statute." *Kephart*, 320 Or at 443-44 (internal quotation marks and citation omitted). The holdings in the Court of Appeals cases were, thus, central to this court's understanding of what the legislature had intended to accomplish by limiting the reviewability bar of *former* ORS 138.222(2)(d) to sentences resulting from a "stipulated sentencing agreement." *Id.* at 445.

In the first Court of Appeals case, *Johnston*, the defendant was convicted of three counts of first-degree robbery pursuant to a plea agreement in which the parties had stipulated to the grid block classification that the court would use to calculate the sentence and had stipulated that the state could recommend a maximum sentence of 108 months, which was a departure from the presumptive sentence. 120 Or App at 167. The trial court imposed departure sentences that totaled exactly 108 months, and the defendant challenged the departures on appeal. *Id.* at 167. But the Court of Appeals held that *former* ORS 138.222(2)(d) (1989) barred review. *Id.* at 169. The Court of Appeals in *Johnston* recognized that, because the parties' agreement did not preclude the defendant from trying "to persuade the court to impose a sentence other than the one recommended by the state," it could "be argued that the defendant has not 'bargained' for the actual sentence to be imposed." *Id.* at 168. The court concluded, however, that the legislature had intended *former* ORS 138.222(2)(d) (1989) to bar review of that kind of "agreement." *Id.* at 169. As this court concluded in *Kephart*, the 1993 amendment to the statute "was drafted to prevent such a result." 320 Or at 446.

In *Kilborn*, the Court of Appeals relied on its decision in *Johnston* to conclude that the state could not obtain review of the trial court's imposition of a probationary sentence, because the plea agreement had included the state's promise to make "no recommendations" as to the sentence. 120 Or App at 464 (internal quotation marks omitted). The Court of Appeals recognized that the sentence of probation was not "an agreed upon sentence," but it concluded that the sentence was unreviewable because the state's "silence as to" incarceration "was part of the bargain" that the parties

had reached. *Id*. As this court reasoned in *Kephart*, the Court of Appeals in *Kilborn* had "completely ignored ORS 135.407" and had concluded that review was barred despite the "lack of an agreed upon sentence." 320 Or at 446-47 (internal quotation marks omitted). The "legislative history of [*former*] ORS 138.222(2)(d) (1993)," this court concluded, "tells us that the legislature intended to reverse the result." *Id*. at 447.

And in *Tanner*, the Court of Appeals held that it lacked authority to review the defendant's claim of an illegal guidelines sentence because, "in exchange for the state's agreement not to indict" the defendant on uncharged felonies, the defendant had agreed to a stipulated facts trial and had agreed to admit to liability for both the charged and uncharged felonies at sentencing, for purposes of setting restitution. 121 Or App at 106. The Court of Appeals relied on its decisions in both *Johnston* and *Kilborn* to conclude that the defendant's "sentence 'resulted from' the negotiated agreement with the state and," therefore, was not reviewable. *Id*. at 106-07. According to this court in *Kephart*, the decision in *Tanner* illustrated the outcome that the legislature intended to prevent with the 1993 amendment to *former* ORS 138.222(2)(d). 320 Or at 447.

The 1993 legislative history also made clear, however, that the drafters of the 1993 amendment had intended to preserve the result of this court's decision in *Adams*. *See Kephart*, 320 Or at 443-44 (quoting and citing statements by representatives from both the Oregon Criminal Defense Lawyers Association and the Oregon District Attorneys Association). As described above, the defendant in *Adams* had stipulated to both the grid block classification that the court should use and to the specific sentence that the court should choose from within the presumptive range for that stipulated grid block, but he nevertheless sought to challenge the grid block classification on appeal. 315 Or at 363-64. This court had determined that *former* ORS 138.222(2)(d) (1989) precluded review of the trial court's decision to calculate the defendant's sentence using the grid block classification to which the parties had expressly stipulated. *Id*. at 366-67.

Notably, both of the sentencing stipulations in *Adams* were stipulations described in ORS 135.407—stipulations as to grid block and as to the specific sentence within the presumptive range for that grid block. ORS 135.407(2), (4). By contrast, as this court reasoned in *Kephart*, the problematic Court of Appeals cases had "strayed from the statutory guidelines set out in ORS 135.407." 320 Or at 445. And, given the legislature's intent to change the results of those Court of Appeals cases, while also preserving the result in *Adams*, this court in *Kephart* concluded that "the legislature intended [the 1993 amendments to the reviewability statute] to allow review of sentences unless they were 'stipulated sentences' as illustrated in ORS 135.407." *Id.* at 447. When the court then applied that understanding of "stipulated sentencing agreement" to the plea agreement at issue in *Kephart*—a stipulation to the maximum total sentence length that the court could impose—this court readily concluded that it was "not a stipulation as to sentencing of a kind described by ORS 135.407 and, because it is not, [*former*] ORS 138.222(2)(d) (1993) does not preclude review." *Id.*

The same day that this court decided *Kephart*, it decided a related case that provides some additional insight into the boundaries of what constitutes a "stipulated sentencing agreement" that will bar review. *State v. Martin*, 320 Or 448, 887 P2d 782 (1994). In *Martin*, the defendant had pleaded no contest to first-degree sodomy and first-degree sexual abuse, pursuant to a plea agreement. *Id.* at 450. As part of the agreement, the parties stipulated to the crime seriousness level that should be assigned to the offenses, but they did not stipulate to the defendant's criminal history score. *Id.* At sentencing, the trial court employed the same method to adjust the defendant's criminal history score as had the trial court in *Kephart*. *Id.* As in *Kephart*, the defendant appealed to challenge the court's calculation of his criminal history score, and the Court of Appeals concluded that the challenge was not reviewable. *Id.*

Although this court in *Martin* ultimately concluded that the sentence was unreviewable under a different subsection of *former* ORS 138.222 (1993)—because it was a "'sentence that is within the presumptive sentence'"—this court

first addressed whether *former* ORS 138.222(2)(d) (1993) barred review. *Id*. at 451 (quoting *former* ORS 138.222(2)(a) (1993)). And we concluded that *former* ORS 138.222(2)(d) (1993) did not bar review because, "[a]s in *State v. Kephart*, this defendant cannot be said to have made a 'stipulated sentencing agreement' as provided in [*former*] ORS 138.222(2)(d) (1993). Defendant's agreement does not comport with any of the types of stipulations set out in ORS 135.407." *Id*. at 450-51.

Our constructions of the reviewability bar in *Kephart* and *Martin*, as well as subsequent decisions from the Court of Appeals, inform our understanding of what the legislature intended when it enacted the current bar to review of "part of a sentence resulting from a stipulated sentencing agreement," ORS 138.105(9). *See Lindell*, 353 Or at 349 (explaining that "[c]ase law existing at the time of the adoption" of the rule or statute "forms a part of the context"). As explained above, the legislature adopted the current version of the statute, which applies in this case, in 2017 when it repealed *former* ORS 138.222(2)(d) (1993) and enacted ORS 138.105(9) in its place. Or Laws 2017, ch 529, § 13(9). The current bar to reviewability was part of a 2017 bill that revised and reorganized the statutes governing criminal appeals, Senate Bill 896 (2017). In addition to retaining the wording that this court construed in *Kephart* and *Martin,* the legislature made explicit that the statute bars review of "*any part of* a sentence resulting from a stipulated sentencing agreement." Or Laws 2017, ch 529, § 13(9), *codified as* ORS 138.105(9) (emphasis added).

The history for the 2017 enactment indicates that the legislature intended to "restate the limits on reviewability currently set forth in [*former*] ORS 138.222(2)(d) [(1993)]" and that the new emphasis on barring review of "*any part of* a sentence" was "not intended to change current law." *Report of the Direct Criminal Appeals Work Group on SB 896 (2017)*, Oregon Law Commission, 21 (emphasis added). The existing "limits on reviewability" in 2017 included those identified by this court in *Kephart* and *Martin*, as well as those articulated in two decisions from the Court of Appeals, in which that court had held that *former* ORS 138.222(2)(d) (1993) did not "preclude review of a portion of a sentence that was not

agreed to between the state and a defendant." *State v. Capri*, 248 Or App 391, 395-96, 273 P3d 290 (2012) (citing *State v. Davis,* 134 Or App 310, 314, 895 P2d 1374 (1995)). As a work group explained to the legislature, "[t]he addition of the phrase 'any part of a' before 'sentence'" was added "to make explicit the conclusion in *State v. Capri* \* \* \* and *State v. Davis* \* \* \* that any portion of a sentence not agreed to between the state and a defendant is reviewable." *Report of the Direct Criminal Appeals Work Group on SB 896 (2017)* at 21-22.

In light of the many indications of legislative intent that we have explored above, we conclude that the scope of the bar to appellate review—now set out in ORS 138.105(9)—is limited in the way that this court described in *Kephart* and *Martin* (and that the Court of Appeals later described in *Capri* and *Davis*). The bar applies only when the parties' agreement is "a stipulation as to sentencing of a kind described by ORS 135.407." *Kephart*, 320 Or at 447.

Defendant argues that, at a minimum, *Kephart*'s conclusion that "stipulated sentencing agreement" means agreements "of a kind described by ORS 135.407" excludes agreements that address how the court could decide a sentencing issue but leave the parties free to attempt to persuade the court how it should decide the sentencing issue—like the parties' agreement in *Kephart* that the trial court could impose a total sentence of up to 50 years but that the defendant could argue for a shorter total sentence. And defendant contends that, similarly, the agreement here regarding the issue of consecutive sentences is at most an agreement that the trial court could impose consecutive sentences, leaving defendant free to argue that the court should not impose consecutive sentences.

Defendant's framing accurately reflects our conclusion and analysis in *Kephart*, which made clear that the bar on reviewability applies only if "certain specific stipulations, *like those* in ORS 135.407, are made." 320 Or at 446 (emphasis added).[5] All the stipulations described in ORS 135.407

---

[5] Defendant alternatively proposes that a "stipulated sentencing agreement" should be understood as limited to the stipulations expressly listed in ORS 135.407, none of which mention consecutive or concurrent terms. He believes

that are highlighted in *Kephart*—stipulations as to grid block classification, as to a sentence within the presumptive range, and as to a departure sentence—are stipulations to a specific decision that the court should make in calculating a sentence; none describes agreements that leave open—and subject to competing argument—what the court ultimately should decide. Defendant's framing also accurately reflects our conclusion in *Kephart* that the legislature intended to prevent the result of cases like *Johnston*, in which the Court of Appeals held that the parties' agreement that the state could recommend a maximum total sentence precluded review of a claim that the court violated the guidelines in imposing that total sentence. *Kephart*, 320 Or at 446; *Johnston*, 120 Or App at 169.

The state disagrees with that scope. According to the state, because the parties' agreement is an agreement "regarding" the issue of consecutive or concurrent sentences, the agreement is a "stipulated sentencing agreement," barring review of the court's decision to impose consecutive terms. This court, however, rejected such a broad interpretation of "stipulated sentencing agreement" in *Kephart* and *Martin*. As those cases demonstrate, not all agreements with stipulations "regarding" sentencing are "stipulated sentencing agreements" for purposes of precluding appellate review. In *Kephart*, for example, the parties stipulated that the trial court could impose a total sentence of 50 years, and the court sentenced the defendant to a total of 50 years. 320 Or at 439. But that agreement did not preclude appellate review of whether the court correctly calculated the defendant's criminal history score—as part of calculating the total sentence of 50 years—because the agreement that the court *could* impose a particular total sentence was "not a stipulation as to sentencing of a kind described by ORS 135.407." *Id.* at 447.

---

that that meaning is more consistent with our conclusion in *Kephart*, although the Court of Appeals has held otherwise. *See, e.g.*, *State v. Upton*, 132 Or App 579, 889 P2d 376 (1995) (concluding that ORS 135.407 is merely representative of the class of stipulations that bar review under ORS 138.105(9)). But there is no need to determine in this case whether the stipulations identified in ORS 135.407 are illustrative, or definitive, of the type of "stipulated sentencing agreement" that will bar review, and we decline to resolve that question.

Although the state emphasizes that a sentencing judge is not bound to accept even the stipulations described in ORS 135.407, that argument misses the point. When a trial court accepts the parties' stipulation to a specific sentence, or to a specific grid block that the court should use to calculate a sentence, it is resolving that sentencing issue exactly how the parties have agreed the court should resolve that issue, and the legislature has determined that there is no role for judicial review of that agreed-upon part of the sentence. But when the parties merely agree on parameters for how the court *could* decide a sentencing issue, leaving room for the parties to argue about how the court *should* decide the issue, then, however the court ultimately decides the issue, the parties will not have agreed in advance to *that* sentence.

We emphasize that reviewability is only a threshold issue. Agreements that do not meet the test that we have articulated for a "stipulated sentencing agreement" might still create obstacles to a successful appellate challenge, possibly including lack of preservation, estoppel, or invited error, but those obstacles do not trigger the absolute bar to appellate review that is imposed by ORS 138.105(9).[6] We conclude that construing ORS 138.105(9) to permit review of sentencing decisions to which the parties did not specifically agree in advance is consistent with what this court repeatedly emphasized in *Kephart* to be the intent of the proponents of the "stipulated sentencing agreement" requirement: "to permit appellate review of 'illegal' sentences, unless the defendant agreed *to that sentence* ahead of time[.]" 320 Or at 445 (emphasis added). At a minimum, ORS 138.105(9) precludes review of a sentencing challenge only when two conditions are met. First, the parties must have agreed to a specific sentence, or to a specific component that the court used to calculate the sentence—such as the

---

[6] The *Kilborn* case decided by the Court of Appeals may be a good illustration of the difference between reviewability and other bars to a successful appellate challenge. The state's agreement to remain "silent" when the court imposed a sentence of probation would present a classic preservation obstacle to challenging the ruling on appeal. But the legislature did not intend to bar review of that challenge. *See Kephart*, 320 Or at 447 (concluding that the "legislative history of [*former*] ORS 138.222(2)(d) (1993) tells us that the legislature intended to reverse the result" of *Kilborn*).

grid block classification. Second, the bar applies to preclude review only of the part of the sentence on which the parties agreed.

### 3. *The parties' agreement*

Those conclusions make clear that the pertinent inquiry here must focus on the parties' agreement with respect to consecutive incarceration terms—because that is the part of the sentence for which defendant seeks review. As noted earlier, the parties agreed as part of defendant's plea agreement that, if the court later revoked defendant's probation, "the court could impose consecutive sentences." In other words, and importantly, the parties did not agree that defendant *would* receive consecutive sentences. Instead, as the Court of Appeals described the nature of the agreement, they agreed that "the state could argue for consecutive sentences and defendant could argue for concurrent ones," and resolution of any dispute would be left to the trial court. *Rusen*, 307 Or App at 761. That lack of specificity with respect to that term of the sentence, the Court of Appeals concluded, meant that there was no "stipulated sentencing agreement" that barred review of the consecutive sentences. *Id*.

We agree with that conclusion. In this case, the parties agreed that the trial court could impose consecutive terms of incarceration as probation revocation sanctions. But they also agreed that defendant would be free to argue that the court should not impose consecutive terms of incarceration, leaving resolution of that issue to the court. As a result, the court's ruling regarding the issue of consecutive or concurrent incarceration terms is not the product of a "stipulated sentencing agreement," and ORS 138.105(9) does not bar review of defendant's challenge to that part of the sentence.

### B.  *The Court's Authority to Impose Consecutive Sentences*

Having determined that defendant's sentence is reviewable, we now consider the parties' arguments regarding whether the trial court properly imposed consecutive terms of incarceration upon revoking defendant's probation. As noted above, the trial court initially sentenced defendant

to four concurrent terms of probation for separate offenses committed on different days. The trial court revoked those terms of probation based on a single probation violation and imposed consecutive terms of incarceration as probation revocation sanctions. Under those facts, the merits question is whether the trial court had authority to impose consecutive terms of incarceration or, instead, was required to impose concurrent terms of incarceration.

Probation revocation sanctions are generally governed by the sentencing guidelines rules, which were first drafted by the Criminal Justice Commission, adopted by the State Sentencing Guidelines Board, and then approved by the legislature in 1989. As a result, they have the force of statute. *See State v. Langdon*, 330 Or 72, 74, 999 P2d 1127 (2000) ("Although the sentencing guidelines were created as administrative rules, the legislature approved them in 1989, giving them the authority of statutory law."). "For defendants sentenced for felonies committed on or after November 1, 1989," a trial court imposing probation revocation sanctions is directed to the guidelines rules by ORS 137.545(5)(b), which provides that "the court that imposed the probationary sentence may revoke probation supervision and *impose a sanction as provided by rules of the Oregon Criminal Justice Commission*." (Emphasis added.)[7]

Among those rules is OAR 213-012-0040(2), which addresses both how to calculate the length of probation revocation sanctions where the defendant is serving multiple terms of probation and whether the trial court may impose those sanctions concurrently or consecutively:

"(2)   When an offender is serving multiple terms of probationary supervision, the sentencing judge may impose revocation sanctions for supervision violations as provided by OAR 213-010-0002 for the violation of each separate term of probationary supervision.

"(a)   If more than one term of probationary supervision is revoked for a single supervision violation, the

_____

[7] There is an exception to ORS 137.545(5)(b)—not applicable to the offenses of which defendant was convicted—under which "the court shall revoke" probation if a defendant who was sentenced to probation commits a new crime. ORS 137.712(5).

sentencing judge shall impose the incarceration sanctions concurrently.

"(b)   If more than one term of probationary supervision is revoked for separate supervision violations, the sentencing judge may impose the incarceration sanctions concurrently or consecutively."

Here, there is no dispute that the trial court properly calculated the length of defendant's probation revocation sanctions. But defendant maintains that the trial court violated paragraph (2)(a) in requiring defendant to serve those sentences consecutively. According to defendant, a trial court has the discretion to impose consecutive revocation sanctions only if, as specified in paragraph (2)(b), the trial court revokes the terms of probation based on separate probation violations. Because the state does not dispute that the trial court revoked defendant's four terms of probation based on a single probation violation, defendant contends that the trial court erred in imposing the incarceration terms consecutively.

The state points to a potential conflict between OAR 213-012-0040(2)(a) and a different provision that, it contends, authorized the court to impose consecutive sentences. Specifically, the state relies on OAR 213-012-0010, which provides that, "[w]hen multiple convictions have been entered against a single defendant, the sentencing judge may impose consecutive or concurrent sentences as provided by ORS 137.123 and 137.370." In turn, ORS 137.123(2) provides that a court may impose either concurrent or consecutive sentences "[i]f a defendant is simultaneously sentenced for criminal offenses that do not arise from the same continuous and uninterrupted course of conduct." In this case, because defendant does not dispute that his underlying convictions did "not arise from the same continuous and uninterrupted course of conduct," the state maintains that OAR 213-012-0010 (with its incorporation of ORS 137.123(2)) gave the trial court the discretion to impose either concurrent or consecutive sentences as probation revocation sanctions.[8]

_____

[8] In its briefing to this court, the state argues that ORS 137.123(2) directly applied to authorize the trial court's imposition of consecutive probation revocation sanctions. The state, as a result, presents an argument about the scope of ORS 137.123(2) based on *State v. Lane*, 357 Or 619, 355 P3d 914 (2015). In

We have previously emphasized that, when multiple statutory provisions potentially conflict, "if the court can give full effect to both statutes, it will do so." *Powers v. Quigley*, 345 Or 432, 438, 198 P3d 919 (2008); *see also* ORS 174.010 (specifying that, "where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all"). The state proposes that we can harmonize the potentially conflicting provisions regarding consecutive sentences by understanding both as giving the court alternative sources of authority to impose consecutive sentences upon revocation of probation—"*either* because the defendant committed the crimes during separate criminal episodes (ORS 137.123(2)) *or* because he committed more than one violation of probation." (Emphasis added.) But the state's proposal would require us to construe the provisions in ways that the text, context, and legislative history do not support.

The state first proposes that ORS 137.545(5)(b)— which provides that the court "may revoke probation supervision and impose a sanction as provided by [the guidelines]"— does not *require* a trial court to follow the guidelines when imposing a probation revocation sanction. The state's interpretation assumes that the provision's use of "may" applies independently to the two clauses that follow: (1) revoke probation supervision and (2) impose a sanction as provided by rules of the Oregon Criminal Justice Commission. Thus, the state reads the provision to provide that, upon finding a probation violation, the trial court may or may not revoke probation, and, if the trial court revokes probation, then the trial court may or may not impose a sanction as provided by the sentencing guidelines rules.

The state's reading is not required by the text of ORS 137.545(5)(b) and is inconsistent with the provision's

---

*Lane*, this court interpreted Article I, section 44(1)(b), of the Oregon Constitution, which provides that "[n]o law shall limit a court's authority to sentence a criminal defendant consecutively for crimes against different victims," as applying to probation revocation sanctions. The state argues that both the constitutional provision from *Lane* and ORS 137.123(2) were enacted by ballot initiative and should be given similarly broad readings. However, as we just explained, the imposition of probation revocation sanctions is governed by the sentencing rules. So, to the extent that ORS 137.123(2) applies at all, it would apply only through OAR 213-012-0010. The application of ORS 137.123(2) is therefore determined by the scope of OAR 213-012-0010, which we address below.

legislative history. The text does not make clear whether "may" gives the court discretion only with respect to the issue of revoking probation or also with respect to whether to follow the guidelines in the event of revocation. But it is clear from the legislative history that the legislature intended to authorize discretion only with respect to whether to revoke probation. The legislature originally adopted a version of that provision as part of the statutes to implement the sentencing guidelines in 1989. That revocation provision stated that, upon finding a probation violation, the trial court "*shall* revoke probation supervision and impose a sanction as provided by rules of the Oregon Criminal Justice Commission." Or Laws 1989, ch 790, § 17(4)(b), *codified as former* ORS 137.550(4)(b) (1989) (emphasis added). Although the legislature amended the provision in the next session to change "shall" to "may," the legislative history of that amendment indicates that the legislature did not intend to make a substantive change to the requirement that, upon revocation, the court shall "impose a sanction as provided by [the guidelines]." Testimony in support of the 1991 amendment indicates that changing "shall" to "may" was, instead, intended to ensure that judges retained their presentencing guidelines discretion regarding whether to revoke probation, reflecting a recognition that not all probation violations warrant revocation. *See* Tape Recording, Senate Committee on Judiciary, SB 620, Feb 18, 1991, Tape 34, Side A (statement of Erik Wasmann) ("[J]udges should have the discretion to decide whether or not to revoke probation. It's not something that we want to mandate."); Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, SB 620, Apr 24, 1991, Tape 65, Side A (statement of David Foster) (noting that change from "shall" to "may" makes "clear that the revocation of probation is discretionary to the sentencing judge rather than mandatory"). There is no indication that the change to "may" was intended to provide trial courts with authority to impose sanctions outside the sentencing guidelines rules in the event that they exercised discretion and revoked probation.

Thus, under ORS 137.545(5)(b), upon finding a probation violation, a trial court may decide to revoke probation and impose a sanction as provided by the sentencing

guidelines rules, or the trial court may decide to not revoke probation and not impose a sanction as provided by the sentencing guidelines rules. But the provision does not authorize a trial court to revoke probation and impose a sanction other than those provided by the sentencing guidelines rules. In combination with OAR 213-012-0040(2), the "sentencing judge shall impose" concurrent terms of incarceration in the event that it revokes more than one term of probation based on "a single supervision violation"—as here. *See Doyle v. City of Medford*, 347 Or 564, 570, 227 P3d 683 (2010) ("Ordinarily, use of the word 'shall' implies that the legislature intended to create an obligation[.]"). Indeed, this court repeatedly emphasized the mandatory nature of OAR 213-012-0040(2)(a) in *State v. Lane*, 357 Or 619, 355 P3d 914 (2015). *See id.* at 621 ("Oregon's sentencing guidelines provide that, if a defendant with multiple terms of probation commits a single probation violation, any resulting terms of incarceration *must be imposed concurrently*, not consecutively." (Citing OAR 213-012-0040(2)(a) (emphasis added).)); *id.* at 639 ("In this case, because OAR 213-012-0040(2)(a) *limited the trial court's authority* to sentence defendant consecutively for his crimes against different victims, Article I, section 44(1)(b), invalidated it." (Emphasis added.)).

The state also proposes that OAR 213-012-0010 and OAR 213-012-0040(2)(a) can be harmonized by understanding the former as governing the imposition of consecutive terms whenever the underlying offenses were separate-episode crimes, while understanding the latter to govern the imposition of multiple probation revocation sanctions in cases where the underlying offenses were single-episode crimes. Here again, however, the state's proposal would require us to ascribe a meaning that we conclude the legislature did not intend.

The state acknowledges that there is no textual basis for limiting OAR 213-012-0040(2)(a) to single-episode crimes and does not purport to offer one. Limiting OAR 213-012-0040(2)(a)'s requirement for concurrent probation revocation sanctions to single-episode crimes would require inserting what has been omitted, a path that we seek to avoid in the construction of statutes. *See* ORS 174.010 ("In

the construction of a statute, the office of a judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted or to omit what has been inserted[.]").

The state, nevertheless, contends that this court's decision in *State v. Miller*, 317 Or 297, 855 P2d 1093 (1993), provides grounds for limiting OAR 213-012-0040(2)(a). In *Miller*, this court held that a sentencing rule capping the aggregate length of consecutive sentences to "twice the maximum presumptive incarceration term of the primary sentence," OAR 253-12-020(2)(b) (1990), should be applied only to single-episode crimes. 317 Or at 307. The court reached that result after noting that the sentencing guidelines rules were drafted before ORS 132.560 was amended to allow crimes committed in separate episodes to be joined in a single indictment. *Id.* at 303. The court also relied on examples from the *Sentencing Guidelines Implementation Manual* (1989), as context, to confirm that the sentencing rule was intended to apply to single-episode crimes. *Id.* at 304-05.

Nothing in *Miller*, however, states that all the original sentencing guidelines rules—drafted and approved in 1989—should be assumed to apply only to single-episode crimes. After all, the bill amending the standards for joinder and the bill approving the sentencing guidelines rules were adopted in the same legislative session and went through the same committees. *See id.* at 305 ("Discussion in the legislative history of both of those bills indicates that the relevant committee of the legislature was, while discussing HB 2250 [(the sentencing guidelines bill)], aware of HB 2251 [(the liberal joinder bill)] and of its relation to the subject of HB 2250."). And the state in this case cites no examples from the *Sentencing Guidelines Implementation Manual*, like those that the court relied on in *Miller*, to establish that OAR 213-012-0040(2)(a) was intended to apply only to single-episode crimes. We therefore decline the state's invitation to extend the reasoning of *Miller* to this case, and we decline the state's invitation to harmonize the apparently conflicting provisions by treating the requirement of consecutive terms in OAR 213-012-0040(2) as either optional or entirely inapplicable.

We are persuaded, however, that the provisions can be harmonized in a different way. We conclude that OAR 213-012-0010 and OAR 213-012-0040(2) should be understood as addressing different stages of sentencing: the former rule applies to initial sentencing immediately following the convictions, while the latter rule refers to probation revocation proceedings.

That honors the text of OAR 213-012-0040(2), which expressly governs probation revocation sanctions. Subsection (2) governs how trial courts calculate the length of the sanctions. Paragraphs (2)(a) and (2)(b) govern when trial courts may impose those sanctions concurrently or consecutively. If multiple terms of probation are revoked for a single violation, then the trial court must impose the sanctions concurrently. OAR 213-012-0040(2)(a).[9] But if multiple terms of probation are revoked for separate violations, then the sanctions may be imposed either concurrently or consecutively. OAR 213-012-0040(2)(b).

Conversely, OAR 213-012-0010 contains no similar express text requiring its application to probation revocation sanctions. As noted above, OAR 213-012-0010 provides that, "[w]hen multiple convictions have been entered against a single defendant, the sentencing judge may impose consecutive or concurrent sentences as provided by ORS 137.123 and 137.370." That failure to refer to probation revocation proceedings is particularly significant in the context of OAR 213-012-0040(2), given that both rules were adopted by the State Sentencing Guidelines Board at the same time and approved by the legislature at the same time. *See, e.g.*, *State v. Klein*, 352 Or 302, 309, 283 P3d 350 (2012) (a statute's context includes "related statutes"). The context provided by OAR 213-012-0040(2) suggests that OAR 213-012-0010 is intended to govern the imposition of concurrent or consecutive sentences upon the trial court entering multiple convictions—that is, at the initial sentencing following the

---

[9] The requirement of concurrent sanctions under OAR 213-012-0040(2)(a) is subject to the constitutional limit identified in *Lane*. *See* 357 Or at 639 (invalidating the application of OAR 213-012-0040(2)(a) where it conflicts with Article I, section 44(1)(b), of the Oregon Constitution, which provides that "[n]o law shall limit a court's authority to sentence a criminal defendant consecutively for crimes against different victims").

convictions—while OAR 213-012-0040(2)(a) and (b) are intended to govern the imposition of concurrent or consecutive sanctions upon probation revocation.

Interpreting OAR 213-012-0010 as governing the initial sentence following conviction and OAR 213-012-0040(2) as governing probation revocation sanctions reconciles the two provisions and gives meaning to the text of both. *See Lane County v. LCDC*, 325 Or 569, 578, 942 P2d 278 (1997) ("[W]e do not look at one subsection of a statute in a vacuum; rather, we construe each part together with the other parts in an attempt to produce a harmonious whole."). And it is the same interpretation that has been applied by the Court of Appeals for decades. *See State v. Stokes*, 133 Or App 355, 358, 891 P2d 13 (1995) (interpreting OAR 213-012-0010 as governing initial sentencing and interpreting OAR 213-012-0040 as governing probation revocation).

We therefore reject the state's argument that the trial court's imposition of consecutive probation revocation sanctions is authorized by OAR 213-012-0010. Rather, as defendant has argued, the imposition of consecutive probation revocation sanctions violates the requirement of OAR 213-012-0040(2)(a) that the court impose concurrent sanctions where multiple terms of probation have been revoked for a single violation.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.