Argued June 5, affirmed July 24, 1968

ROBERT GEORGE DIXON, *Appellant, v.*
GLADDEN, *Respondent.*
444 P. 2d 11

·· *John Marvin Kuhn,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Lawrence A. Aschenbrenner, Public Defender, Salem.

*David H. Blunt,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was Robert Y. Thornton, Attorney General, Salem.

Before PERRY, Chief Justice, and MCALLISTER, O'CONNELL, DENECKE and RODMAN, Justices.

RODMAN, J. (Pro Tempore).

This is an appeal from a judgment denying post-conviction relief. In 1963 the petitioner upon a plea of guilty to an indictment charging him with rape was sentenced, pursuant to ORS 137.111, to an indeterminate term not to exceed his natural life. He appealed from the judgment on the ground that the sentence was cruel and unusual and that the statute providing for a life sentence for certain sex offenders was unconstitutional. The judgment was affirmed.

*State v. Dixon,* 238 Or 121, 393 P2d 204 (1964), citing *Jensen v. Gladden,* 231 Or 141, 372 P2d 183 (1962).

In his petition asking for post-conviction relief the petitioner contends that he was denied due process of law under the Fourteenth Amendment to the Constitution of the United States in that he did not knowingly and understandingly enter a plea of guilty to the charge. This raises a constitutional question which could not have been asserted on the direct appeal. *State v. Jairl,* 229 Or 533, 368 P2d 323 (1962). His position is that his plea was not voluntary because he did not know and was not advised by his court-appointed attorneys or the sentencing judge of the maximum penalty that could be imposed for the crime of which he was convicted.

In January 1963 the petitioner was charged with rape involving an eight-year-old child. A hearing was held at which it was determined, after psychiatric examination, that he was competent to stand trial and assist in his own defense. On March 1, 1963, he entered a plea of not guilty. On March 19, 1963, the plea of not guilty was withdrawn and a guilty plea entered. Before imposing sentence the court ordered the petitioner committed to the Oregon State Hospital for a psychiatric examination to determine if he had a mental or emotional condition predisposing him to the commission of certain sex crimes. Finding that he did, on May 16, 1963, the court sentenced the petitioner to the indeterminate life sentence provided in ORS 137.111.

At all times the petitioner had the counsel and advice of two court-appointed attorneys, one of whom had been an active member of the bar for 13 years and had represented defendants in 50 to 100 felony cases. Both were diligent in maintaining contact with

the petitioner and in preparing his case. Trial had been set for March 19, 1963. Several days before that date, the senior counsel was advised by the jailor that his client was writing a confession in his jail cell. He went immediately to the jail and had a long conference with the petitioner. Dixon insisted that he was going to plead guilty despite his attorney's advice that he believed the state would probably not be able to prove penetration. The evidence in the hands of the authorities showed the presence of semen in the victim's vagina, but no tearing or bruising of that area.

The petitioner remained adamant in his desire to plead guilty and advised the attorney that "if I didn't let him plead guilty that he would jump up in the courtroom in front of the jury and judge and say he was guilty, and he told me from the beginning he was guilty and he had written a confession and he wanted it delivered to the District Attorney." During that conference he told the petitioner that he would receive a 20- or 30-year sentence if he were convicted or plead guilty. On another occasion he advised the defendant that, "* * * he was going to the penitentiary for a long, long time if he pleaded guilty." On the morning set for trial the attorney again attempted to dissuade Dixon from entering a plea of guilty.

This attorney was unable to recall that he had ever specifically advised Dixon that he could receive a life sentence. The other court-appointed attorney was unavailable as a witness at the post-conviction hearing.

At the time of sentencing, there was a colloquy between court and counsel in the presence of the defendant in which it was stated that the maximum sentence

for the offense was life imprisonment. Thereafter, the court inquired of him whether he had anything to say before imposition of sentence, and he said, "Only that I have faith that psychiatry can help me."

In *Semmes v. Williard,* 247 Or 583, 431 P2d 844 (1967), the petitioner argued that he did not knowingly and intelligently enter his plea of guilty because he did not know the full penalty that could be assessed. He had been sentenced to the Oregon State Correctional Institution for a term of three years for the offense of robbery by putting in fear, not being armed with a dangerous weapon. The maximum penalty provided by law was 15 years. Shortly before sentence, he had been sentenced by another court to a term of seven years in the Oregon State Correctional Institution for a separate offense of robbery by putting in fear, not being armed with a dangerous weapon. We held there that since he knew he could be sentenced to at least seven years' incarceration it was immaterial whether he knew the full penalty provided by law for the crime. Semmes was not represented by counsel. In the case at bar we have the question of whether a guilty plea is proof against constitutional attack where the defendant was unaware, before entering his plea, of the maximum penalty and thereafter the maximum penalty was imposed.

In *Huffman v. Alexander,* 197 Or 283, 251 P2d 87, 253 P2d 289 (1953), we said that the general rule concerning the validity of a guilty plea is:

> " 'A plea of guilty should be entirely voluntary, by one competent to know the consequences, and should not be induced by fear, misapprehension, persuasion, promises, inadvertence, or ignorance * * *.' 14 Am Jur, Criminal Law, § 270."

In that same case the court said, in connection with waiver of indictment:

"Although courts are reluctant to find that fundamental constitutional rights have been waived, it is nevertheless the rule that such rights may be waived. *Schick v. United States,* 195 US 65, 49 Led 99. But the waiver to be valid must not be the product of duress or misrepresentation. It must be voluntary and must be understandingly made with knowledge by the party of his rights. In this connection the age, education, experience, mental capacity, the nature of the charge, whether complicated or simple, the possible defenses available and other relevant circumstances will be considered if the case be taken to a federal court and should be considered in the state court if conflicts and intolerable delays are to be avoided * * *." 197 Or at 321.

In *State v. Burnett,* 228 Or 556, 365 P2d 1060 (1961), this court held that it is not error to refuse leave to withdraw a guilty plea if the defendant fully understood his rights, the nature of the charge against him, and the consequences of such a plea.

A plea of guilty cannot be said to be understandingly made if the defendant does not know the legal consequences of such a plea. Included among these consequences is the maximum sentence that can be imposed. *Kotz v. United States,* 353 F2d 312 (8th Cir 1965); *Pilkington v. United States,* 315 F2d 204 (4th Cir 1963); *Von Moltke v. Gillies,* 332 US 708, 68 S Ct 316, 92 Led 309 (1948); *Kercheval v. United States,* 274 US 220, 47 S Ct 582, 71 Led 1009 (1927); *Huffman v. Alexander,* supra; *State v. Burnett,* supra; *Com. ex rel West v. Myers,* 423 Pa 1, 222 A2d 918 (1966); *In re Woods v. Rhay,* 68 Wn2d 601, 414 P2d 601, cert. den., 385 US 905 (1966).

In *Von Moltke v. Gillies,* supra, the United States Supreme Court, in discussing waiver of counsel, said:

> "* * * To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered." 332 US at 724.

■ Implicit in the above statement is the duty of counsel to advise a defendant, *inter alia,* of the consequences of his plea.

In a number of jurisdictions the duty is imposed on the court by constitutional provision, statute or court rule to determine affirmatively in open court that the defendant voluntarily enters his plea with full understanding of the consequences.[1] Rule 11 of the Federal Rules of Criminal Procedure provides:

> "A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere.* The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea * * *. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."

In 1966 the rule was amended by the addition of the words "addressing the defendant personally," "and

---

[1] See collected cases in Annotation, 97 ALR2d 549 (1964).

the consequences of the plea," and the last sentence quoted above. The amendment and the enactment of statutes and court rules similar to Rule 11 in a number of the states reflect not only a concern for the constitutional rights of criminal defendants but also an attempt to stem the growing volume of post-conviction cases that are flooding the state and federal courts. In *Gundlach v. United States,* 262 F2d 72 (4th Cir 1958), the Court of Appeals said:

> "* * * These rules [Rule 10 on Arraignment and Rule 11] are designed not only to safeguard important rights of defendants, but their observance serves also to protect proper administration of the criminal law. When the trial judge fully complies with these rules and is careful to have the record plainly show that this has been done, it may go far to foreclose irresponsible challenges in the future and the necessity for a hearing under Section 2255 at a time when the facts surrounding the arraignment, plea and sentence may not be as fresh and readily available as they were in this instance * * *." 262 F2d at 76.

The Ninth Circuit Court of Appeals has held that compliance with the rule is mandatory in the federal courts and failure of the court to conduct the required examination in open court requires the setting aside of a guilty plea even though no prejudice is shown. *Heiden v. United States,* 353 F2d 53 (9th Cir 1965).

■ Due process, however, is concerned not with whether a defendant has been advised but whether he knows. The constitutional requirement is that the defendant have understanding, not that it be imparted to him in some particular manner. *Harper v. United States,* 368 F2d 53 (10th Cir 1966); *Kotz v. United States,* supra; *Pilkington v. United States,* supra.

■ Further, before one may obtain post-conviction relief, he must show that he has suffered some prejudice in the criminal process by reson of his lack of understanding or knowledge of the consequences of his guilty plea. In *Semmes v. Williard,* supra, the petitioner was not prejudiced in receiving a three-year sentence because he did not know that the maximum sentence was 15 years since he did know that he could receive at least seven years' imprisonment.

In *Butler v. Burke,* 360 F2d 118 (7th Cir 1966), the petitioner was sentenced under the Wisconsin Sexual Deviates Act on a plea of guilty to the crime of "enticing a child for criminal purposes." He was not aware of the fact that he could be sentenced to prison for "treatment" under the Sexual Deviates Act. The court held that he was not prejudiced because under the provisions of that Act he could not be imprisoned for a longer term than that provided for the "enticing" offense unless a further judicial proceeding were held at which it was determined that he was still considered dangerous. The petitioner had not been represented by counsel.

In *Tucker v. Gladden,* 245 Or 109, 420 P2d 625 (1966), the petitioner, without counsel, entered a plea of guilty to an information charging him with assault and battery while unarmed by means of force likely to produce great bodily harm and was sentenced to five years in the penitentiary. He claimed that he had not voluntarily and understandingly entered a guilty plea. Just prior to sentencing the district attorney stated in open court that the maximum penalty was five years' imprisonment. In denying post-conviction relief the court said:

> "Prior to sentence petitioner learned of the maximum sentence that could be imposed, and was

given an opportunity by the judge to make any remarks he wished. He did not avail himself of this opportunity to protest that he had not known the possible consequences of his plea. From this it can be inferred that he knew the maximum possibilities involved or that, in any event, they had no effect on his plea." 245 Or at 112.

The petitioner in *Doane v. Gladden,* 246 Or 183, 424 P2d 234 (1967), received a life sentence for a sexual offense. He was not represented by counsel and was not advised that counsel would be furnished at public expense. He was told only that the offense was a serious one. At no time prior to the imposition of sentence did he know that a life sentence could be imposed. We granted post-conviction relief on the ground that he was denied his constitutional right to counsel.

In the case at bar, Dixon knew before entering his plea that he could be sentenced to at least thirty years. He entered the plea of guilty over the strenuous objections of his able and experienced counsel. He admitted in the post-conviction hearing that he knew a life sentence could be imposed before he was sentenced. The sentencing judge before imposing sentence, asked if he had anything to say and he said only that he had faith that psychiatry could help him. We hold that on these facts the defendant has been denied no constitutional rights.

The judgment is affirmed.

PERRY, C. J., concurs in the result.