714 June 5, 2025 No. 22

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Petitioner on Review,*

*v.*

JAMES CLARE WALSH IV,
*Respondent on Review.*

(CC 20CR11620) (CA A178543) (SC S070940)

En Banc

On review from the Court of Appeals.*

Argued and submitted January 9, 2025.

Christopher A. Perdue, Assistant Attorney General, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Anne Fujita Munsey, Deputy Public Defender, Oregon Public Defense Commission, Salem, argued the cause and filed the brief for respondent on review. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section.

BUSHONG, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

_____

* Appeal from Clackamas County Circuit Court, Ulanda Watkins, Judge. 330 Or App 617 (2024) (nonprecedential memorandum opinion).

**BUSHONG, J.**

This criminal case requires us to determine the consequences of a dispute over a stipulation in a plea agreement that the court "may impose" consecutive sentences on two charges. At sentencing, defendant contended that Oregon law precluded the trial court from imposing consecutive sentences, because it had not made the findings that are ordinarily required by ORS 137.123(5) for consecutive sentences.[1] The state disagreed, contending that defendant's stipulation that the court "may impose" consecutive sentences meant that the court could do so without making the statutory findings. That triggered a discussion between counsel and the court about the effect of the "may impose" provision and whether the parties had reached a binding plea agreement. After that discussion, defendant withdrew his legal argument and affirmed that he was stipulating that the court could impose consecutive sentences without making the statutory findings. The court then proceeded to sentence defendant on two counts—imposing consecutive sentences on those counts without making the statutory findings—and dismissing the remaining counts.

Defendant appealed, and the Court of Appeals reversed, concluding that "nothing in the plea agreement" prevented defendant from arguing that consecutive sentences were legally impermissible absent the required statutory findings, and that the trial court had erred "in concluding that the parties had not reached a plea agreement[.]" *State v. Walsh*, 330 Or App 617, 619 (2024) (nonprecedential memorandum opinion). We allowed the state's petition for review and now reverse the Court of Appeals.

As we will explain, although the plea agreement did not mention the statutory findings required for consecutive sentences and can therefore be understood as defendant contended at sentencing, its statement that the court "may impose" consecutive sentences also can plausibly be read to mean that the court had the legal authority to impose

---

[1] As discussed later in this opinion, where a defendant is convicted of multiple offenses arising out of a continuous and uninterrupted course of conduct, the court may impose consecutive sentences only if it makes the findings required by ORS 137.123(5). The parties do not dispute that defendant's convictions here arose out of a continuous and uninterrupted course of conduct.

consecutive sentences without making those findings, as the state contends. The issue here is whether the trial court erred in how it addressed that ambiguity under the circumstances of this case. As explained below, those circumstances include the court's statement that, if the parties did not resolve their dispute, it would treat the plea as withdrawn and return the case to the trial docket. Defendant did not object to that statement or argue that it was erroneous. Instead, defendant decided to withdraw his argument that the trial court could impose consecutive sentences only if the court made the findings required by ORS 137.123(5), and he affirmed that he wished to proceed to sentencing.

We conclude that, under those circumstances, the trial court did not err in how it handled the situation when confronted with the ambiguous plea agreement at sentencing. Accordingly, we reverse the decision of the Court of Appeals and affirm the judgment of the trial court.

## I.   BACKGROUND

The facts are procedural and taken from the trial court record. Defendant was charged by indictment with four Measure 11 offenses: one count of first-degree unlawful sexual penetration against a child victim under the age of 12 (Count 1), and three counts of first-degree sexual abuse for acts committed against the same victim (Counts 2 to 4).[2] First-degree unlawful sexual penetration carries a mandatory sentence of 300 months in prison, ORS 137.700 (2)(b)(F), and the other counts are each subject to mandatory sentences of 75 months in prison, ORS 137.700(2)(a)(Q).

The parties informed the court the day before trial was scheduled to begin that a trial would not be necessary, because they had reached an agreement on a plea. Pursuant to the parties' written plea agreement, defendant pleaded guilty on Count 1 to the lesser-included offense of attempted first-degree unlawful sexual penetration—thereby avoiding the mandatory 300-month sentence—and one count of first-degree sexual abuse (Count 4). The other two counts

---

[2] Measure 11, adopted by the people in 1994, provides for mandatory sentences for certain offenses, as codified in ORS 137.700. *See State ex rel Huddleston v. Sawyer*, 324 Or 597, 599, 932 P2d 1145 (1997) (describing Measure 11).

of first-degree sexual abuse (Counts 2 and 3) were to be dismissed at sentencing.

The parties did not reach an agreement on the length of the prison term that the court should impose, but they agreed to limit their requests to a prison term of between 75 and 180 months. Defendant could receive a prison sentence totaling 180 months if the sentences on the two counts ran consecutively, and he could receive a prison sentence of 75 months if they ran concurrently and the court departed downward from the presumptive sentence on Count 1.[3] The written plea agreement included a provision stating that "[d]efendant stipulates that the state may argue for and the court may impose consecutive sentences" on Counts 1 and 4. At the plea hearing, the court accepted defendant's guilty pleas on those counts, ordered a presentence investigation report, and set a date for sentencing.

The presentence investigation report recommended a 110-month sentence on Count 1 and the mandatory 75-month sentence on Count 4, with those sentences to run concurrently. The state filed a sentencing memorandum requesting a 180-month prison sentence—105 months on Count 1 and 75 months on Count 4, with those sentences to run consecutively. Neither the presentence investigation report nor the sentencing memorandum addressed whether findings would be required by ORS 137.123(5) to impose consecutive sentences.

At sentencing—three months after the plea hearing— a dispute arose about the meaning of the plea agreement, specifically, the "court may impose" provision. The discussion between counsel and the court regarding that dispute is critical to resolving the issue presented on review, so we set forth that discussion in some detail.

After the state urged the court to impose consecutive sentences for the reasons set forth in the state's sentencing

---

[3] The presumptive prison sentence on the attempted first-degree unlawful sexual penetration charge—a lesser-included offense on Count 1—was 91 to 110 months because defendant stipulated to a sentencing guidelines grid block of 10-D as part of his plea agreement. The plea agreement stated that defendant "may seek any sentence" and that the state "may ask no more than 105 months" on the attempted penetration charge that would be consecutive to the mandatory 75-month prison sentence on the first-degree sexual abuse charge (Count 4).

memorandum and summarized at the sentencing hearing, defendant contended that the trial court was required to impose the sentences concurrently under ORS 137.123(4). Specifically, defendant argued that, because the convictions arose out of a continuous and uninterrupted course of conduct, the court had no legal authority to impose consecutive sentences without making the findings required by ORS 137.123(5) for consecutive sentences under those circumstances.[4]

The prosecutor then interrupted the defense argument, stating that, because defendant had stipulated that sentences could be imposed consecutively, the prosecutor "didn't think that [a statutory finding] was an issue to be proven in this case." The prosecutor continued, "if that's not the case, we're needing to have a conversation that there wasn't a meeting of the minds for this resolution." Defense counsel responded, "I guess I was reading that [provision] as [requiring] the appropriate finding." The court then asked defense counsel if he was arguing that consecutive sentences were "not lawful," or that the stipulation meant that the state did not need to prove that this was not the same continuous and uninterrupted course of conduct. Defense counsel responded that it's "clearly [an] uninterrupted course of conduct," so the question was the meaning of the phrase

---

[4] ORS 137.123 provides, in part:

"(4) When a defendant has been found guilty of more than one criminal offense arising out of a continuous and uninterrupted course of conduct, the sentences imposed for each resulting conviction shall be concurrent unless the court complies with the procedures set forth in subsection (5) of this section.

"(5) The court has discretion to impose consecutive terms of imprisonment for separate convictions arising out of a continuous and uninterrupted course of conduct only if the court finds:

"(a) That the criminal offense for which a consecutive sentence is contemplated was not merely an incidental violation of a separate statutory provision in the course of the commission of a more serious crime but rather was an indication of defendant's willingness to commit more than one criminal offense; or

"(b) The criminal offense for which a consecutive sentence is contemplated caused or created a risk of causing greater or qualitatively different loss, injury or harm to the victim or caused or created a risk of causing loss, injury or harm to a different victim than was caused or threatened by the other offense or offenses committed during a continuous and uninterrupted course of conduct."

"[d]efendant stipulates that the state may argue for and the court may impose" consecutive sentences on Counts 1 and 4. Specifically, counsel explained, the question was whether that stipulation was "waiving a statutory finding that would be required for a consecutive sentence."

The court agreed, stating, "Yep. That is the question." Defense counsel then stated that he "should probably have a conversation" with his client because he understood defendant's stipulation that the court "may impose" consecutive sentences to mean that the court could do so only if it made "the appropriate finding." Counsel explained that he understood "may" to mean that consecutive sentences were "possible," but only if the court made the findings required by ORS 137.123(5).

The prosecutor responded that the defense stipulation that the court "may impose" consecutive sentences was comparable to the state's stipulation that defendant could seek a downward departure to 75 months on Count 1 without showing substantial and compelling reasons for the departure, as would otherwise be required by the sentencing guidelines. Defense counsel responded that he never understood the state's stipulation to mean that he did not have to show compelling reasons for a downward departure on Count 1, just that he "may argue for it."

At that point, the trial court suggested that the parties "have to decide if there was clearly a meeting of the minds because this is a pretty big and important sticking point, and it may undo the entire plea." Defense counsel responded that he could see "two ways this gets resolved." He explained that he wanted "to be sure" that he understood "the choices" before talking to his client. Counsel asked whether the options were as follows: (1) the parties "present this [dispute] to the court, and it's a court determination"; or (2) "as long as the state believes that they were asking us to waive [the findings required by] ORS 137.123[,] *** that would result in the plea being taken back." Counsel explained that "I want to make sure I give [defendant] the choices."

In response, the court did not address whether the two options identified by defense counsel were in fact options

or the only two options that were available to resolving the dispute. Instead, the court stated that the case had been set for trial, and that the parties had then informed the court, on "the eve of trial," that they had a stipulation that resolved the case, so the court had canceled the trial and accepted defendant's guilty pleas on Counts 1 and 4. But given the parties' subsequent dispute at sentencing over the intended effect of their stipulation, the court stated that it "would interpret this" situation as "you all did not have a stipulated agreement," which would mean that "the plea would be undone, and [the case] would go back on the trial docket."

Defense counsel then conferred with defendant off the record. Back on the record, defense counsel explained that his client understood that, if he elected to have counsel continue with the legal argument that he had been making, that would result in "a withdrawal of the plea" and the case would be "put back on the trial docket." Counsel explained that, "[h]aving considered the choices," defendant "elects to *** withdraw the legal argument" that counsel was making, relying instead upon "further arguments that [counsel is] going to make for discretionary reasons that the court should impose a concurrent sentence." Defense counsel then proceeded with his argument, urging the court to impose a 75-month sentence, requesting sympathy and mercy, and identifying other mitigating factors.

The prosecutor began the state's rebuttal argument by asking defense counsel to confirm that defendant was not only "withdrawing his [legal] argument" that consecutive sentences were not permitted, but that defendant was "stipulating that the court can impose a consecutive sentence and is waiving any statutory or constitutional objection" to consecutive sentences. Defense counsel responded, "Are you asking me?" The prosecutor responded, "Yes. Or the defendant." The prosecutor explained that she just wanted "to make sure the record is clear that the defendant is waiving those objections." The court then intervened, stating that the court understood defense counsel to say, after speaking with his client, that "rather than void the plea because there's not a meeting of the minds," defendant is stipulating "that [ORS] 137.123 does not apply, and the court may

sentence the defendant to consecutive sentences, not that [defendant is] stipulating to consecutive sentences, but just that 137.123 is waived."

In response, defense counsel stated, "Yeah, I think that's right, and to put even a little finer point on it," counsel explained that defendant was stipulating that the phrase "the court may impose" consecutive sentences meant that the court in its discretion could impose consecutive sentences without making the findings that would otherwise be required by ORS 137.123(5). The state then finished its rebuttal argument without further discussion of this issue. The trial court ultimately imposed a 105-month prison sentence on Count 1 that was consecutive to the mandatory 75-month prison sentence on Count 4. Defendant appealed.

The Court of Appeals began by pointing out that a plea agreement "is generally interpreted according to contract law." *Walsh*, 330 Or App at 618 (citing *State v. Heisser*, 350 Or 12, 23, 249 P3d 113 (2011)). Thus, the court stated that its "'first inquiry is what the words of the contract say, not what the parties say about it.'" *Id.* at 619 (quoting *Heisser*, 350 Or at 25). The court then concluded that "nothing in the plea agreement prevented defendant from arguing that the statute requires the imposition of concurrent sentences." *Id.* The court further determined that the trial court had "erred in concluding that the parties had not reached a plea agreement because there was no 'meeting of the minds,' and that defendant could therefore not raise his legal argument." *Id.* The court remanded for resentencing "to allow defendant to make his legal argument challenging the imposition of consecutive sentences." *Id.*

The state petitioned for, and we allowed, review.

## II.   DISCUSSION

As discussed above, the Court of Appeals made two legal rulings about the events leading to the trial court's imposition of consecutive sentences in this case: (1) Nothing in the parties' plea agreement precluded defendant from arguing that the court had to make the factual findings required by ORS 137.123(5) before it could impose consecutive sentences; and (2) the trial court had erroneously

concluded that the parties had not reached an agreement because there was no "meeting of the minds" on that critical term. We review those rulings for legal error. *Heisser*, 350 Or at 20-21 (applying that principle).

On review, the state contends that the Court of Appeals erred because the plea agreement unambiguously authorized the trial court to impose consecutive sentences without making findings under ORS 137.123(5). Alternatively, the state contends that the agreement was ambiguous, and that the trial court did not err in addressing that ambiguity and, ultimately, sentencing defendant after he withdrew his objection based on the lack of findings. Defendant contends that the Court of Appeals correctly determined that the plea agreement was unambiguous, and that nothing in that agreement precluded him from contending that the trial court could impose consecutive sentences only if it made the findings required by ORS 137.123(5). Alternatively, defendant contends that, if the plea agreement was ambiguous, then the court was required to resolve the ambiguity by interpreting the agreement against the state, instead of threatening to "undo" the agreement entirely.

Although we have not previously decided the legal issue presented in this case, we have addressed the legal principles governing plea agreements in Oregon that will inform its resolution. We begin with an overview of those principles before applying them to the circumstances here.

A. *Plea Agreements Under Oregon Law*

In 1973, the Oregon Legislature "adopted the American Bar Association's recommendation to formally organize and control the plea negotiation process." *State v. McDonnell*, 310 Or 98, 102-03, 794 P2d 780 (1990) (citing Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Procedure Code, Final Draft and Report, § 263, 158 (Nov 1972)). The legislature understood, at that time, that negotiated guilty pleas had been publicly criticized based on the perception that they resulted in "overly lenient dispositions[.]" *McDonnell*, 310 Or at 103. But, because the legislature saw plea negotiations as "an essential component of an efficient and effective justice

system," it enacted statutory standards to control "the circumstances under which a district attorney could negotiate a plea together with procedures designed to make plea negotiations open to public scrutiny." *Id*.

As a result, since 1973, an Oregon prosecutor's authority to "enter into plea negotiations and plea agreements has been 'formally organized and controlled' by statute." *Heisser*, 350 Or at 22 (quoting *McDonnell*, 310 Or at 102-03) (internal brackets omitted). By statute, a prosecutor may give concessions to a defendant in exchange for a plea of guilty or no contest as part of a plea agreement. ORS 135.405(3). Specifically, the prosecutor may agree, depending on the circumstances: (a) to make or not to oppose favorable recommendations as to the sentence; (b) to seek or not to oppose dismissal of the offense charged if the defendant enters a guilty or no contest plea to another offense reasonably related to the defendant's conduct; or (c) to seek or not to oppose dismissal of other charges or to refrain from bringing other potential charges. *Id*.[5]

If the parties inform the trial court that they have reached a tentative plea agreement, the trial court must "determine the nature of the agreement." ORS 135.390(2). The statutory scheme governing plea agreements "contemplates different kinds of agreements." *Heisser*, 350 Or at 22. Under certain plea agreements, the trial court must give the negotiated agreement "due consideration" as to sentencing. ORS 135.432(4). Other plea agreements require the court to impose a sentence "as provided in the agreed disposition recommendation" stated in the plea agreement. ORS 135.390(5)(a). In that kind of agreement—commonly known as a "contract plea"—if the court determines that the agreed disposition recommendation is "inappropriate," the court is required to so advise the parties "and allow the defendant an opportunity to withdraw the plea." ORS 135.390(5)(b); *see also Heisser*, 350 Or at 22-23 (describing the different types of plea agreements).

In interpreting plea agreements, this court has indicated that principles of contract law "generally (but not

---

[5] Another statute provides that a prosecutor may not condition the plea offer on defendant's waiver of certain rights specified in the statute or require the defendant to stipulate to the unconstitutionality of an existing law. ORS 135.418(1)(a), (b).

invariably)" will control. *Heisser*, 350 Or at 23. Contract law "is not necessarily the beginning or the end of the analysis" because criminal cases "involve constitutional and statutory rights not ordinarily found in contracts between private parties, and those rights at times may override contractual principles." *Id.*; *see also State v. King*, 361 Or 646, 648, 398 P3d 336 (2017) (stating that "contract principles that apply in a commercial setting do not necessarily suffice for an analysis of a plea agreement").

For example, a criminal defendant who enters into a plea agreement "waives the constitutional rights to a jury trial, to confront accusers, and to assert the privilege against compulsory self-incrimination." *King*, 361 Or at 666. Defendants waiving such rights "must understand the rights being waived and must do so free from coercion." *Id.* A trial court may not accept a guilty plea unless it determines that the plea is "voluntary and intelligently made." ORS 135.390(1); *see also* ORS 135.390(5)(a) (where there is a plea agreement, "the court shall determine whether the plea is voluntarily made"); *Lyons v. Pearce*, 298 Or 554, 560, 694 P2d 969 (1985) (guilty pleas must be "voluntary and made with knowledge of the consequences"); *Dixon v. Gladden*, 250 Or 580, 584, 444 P2d 11 (1968) (a guilty plea "should be entirely voluntary, by one competent to know the consequences, and should not be induced by fear, misapprehension, persuasion, promises, inadvertence, or ignorance") (internal citations and quotation marks omitted).

The trial court's statutory obligation to ensure that a plea has been "voluntarily made" continues until the defendant is sentenced in accordance with the plea agreement. *See* ORS 135.390(5)(a) (stating that, "if the court finds that the plea is voluntarily made, the court shall impose sentence as provided in the agreed disposition recommendation"). Because of the court's statutory and constitutional obligation to ensure that a plea has been made voluntarily and knowingly, we have concluded that "a defendant's signature on a written plea agreement is not necessarily sufficient to create a binding agreement[.]" *Heisser*, 350 Or at 23-24.

We applied those principles in *Heisser* in determining whether the parties in that case had entered into

a binding plea agreement, and if so, what the terms of that agreement were. *Id.* at 14 (stating that the issue in that case was "whether defendant and the state entered into a plea agreement, and if so, the terms of that agreement"). Our analysis of those issues in *Heisser* is instructive, so we turn to that analysis next.

   The defendant in *Heisser* had been indicted on one count of first-degree robbery—a Measure 11 offense that carried a mandatory 90-month prison term—along with two counts of second-degree theft and one count of unauthorized use of a vehicle (UUV). Plea negotiations facilitated by a judge resulted in a written plea agreement that provided that the defendant would plead guilty to the lesser-included offense of third-degree robbery—thereby avoiding a mandatory Measure 11 sentence—as well as both counts of second-degree theft and the UUV charge. Regarding sentencing, the plea agreement provided that the state was "'free to seek departure sentences'" that totaled no more than 50 months in prison on the felony offenses, while the defendant was "'free to seek presumptive sentences and all concurrent sentences,'" which would result in as little as 13 months in prison. *Id.* at 15 (quoting plea agreement).

   A dispute regarding the terms of the parties' plea agreement arose, and the parties returned to the judge that had facilitated the plea negotiations. The defendant contended that the state could not rely on an enhancement fact in support of an upward departure sentence because the state had failed to give the defendant timely notice that it intended to rely on that enhancement fact, as required by ORS 136.765.[6] The state disagreed. The judge who had facilitated the plea negotiations then, *sua sponte*, invited the state to withdraw from the plea agreement, and ultimately concluded that the plea agreement had been withdrawn. A different judge then denied the defendant's request to specifically enforce the plea agreement, concluding that, "because

_____

   [6] ORS 136.765(2) (2011), *amended by* Or Laws 2011, ch 267, § 1, required the state to give written notice of the enhancement fact and the state's intention to rely on it within "a reasonable time after filing the accusatory instrument." The defendant in *Heisser* had contended that the state's notice was not timely because it had been given *before* the indictment, not "after" as required by the statute. *Heisser*, 350 Or at 16. It was not necessary for this court to address that contention.

there was no meeting of the minds, there was no plea agreement that could be specifically enforced." *Id.* at 18.

The case then proceeded to trial, and a jury found the defendant guilty on all counts. The trial court sentenced the defendant to 90 months in prison for first-degree robbery, and 26 months in prison for UUV, with the sentences to run consecutively, for a total prison sentence of 116 months.[7] A divided Court of Appeals reversed and remanded for the trial court to reinstate the defendant's guilty pleas and sentence the defendant in accordance with the plea agreement. We allowed review and affirmed the Court of Appeals' decision, "albeit on different grounds." *Id.* at 14.

We first concluded that the trial court had erred in determining that the parties had not reached a plea agreement. *Id.* at 20. We explained that the trial court had applied an incorrect legal standard "when it determined that the parties' differing subjective understandings of the plea agreement meant that there was no 'meeting of the minds.'" *Id.* at 26. Instead, we concluded that the plea agreement was enforceable because both parties had "signed an unambiguous written plea agreement" and "there was mutual assent to the terms of that agreement[.]" *Id.*

We then turned to the second issue in *Heisser*— determining the meaning of the terms of the agreement. *Id.* As noted above, the trial court had determined that the written plea agreement had "prohibited [the] defendant from arguing against the timeliness of the state's notice to seek upward departure sentences." *Id.* at 26-27. We came to "the opposite conclusion." *Id.* at 27. We noted that the plea agreement provided that the state "'is free to seek departure sentences'" and that the trial court had reasoned that such a provision "impliedly limited the arguments that [the] defendant could make in response to the state's argument." *Id.*

The trial court's reasoning was incorrect, we explained, because "[n]othing in the text of the agreement prohibited [the] defendant from pointing out any mistakes

_____

[7] The trial court also imposed concurrent 12-month sentences on each of the two second-degree theft counts.

the state might have made in laying the groundwork for upward departure sentences." *Id.* Nor did anything in the written plea agreement "limit the legal or factual arguments that [the] defendant could make in favor of presumptive sentences and against departure sentences." *Id.* Thus, the defendant's agreement "to permit the state to argue for a longer sentence did not waive his opportunity to make counterarguments supporting a shorter sentence." *Id.* We concluded that we "must give effect to all provisions" of the plea agreement and that, under the terms of the agreement in that case, "the state was free to seek upward departure sentences, *and [the] defendant was free to oppose them.*" *Id.* (emphasis in original).

B.   *Application to This Case*

The foregoing summary of the legal principles governing plea agreements under Oregon law informs our resolution of the dispute in this case. Although plea negotiations and agreements are generally controlled by statute, no statute specifically addresses what a trial court must do when a dispute about the meaning of the agreement arises at the time of sentencing. In *Heisser*, we determined that the court's first task was to determine whether the parties had mutually assented to the terms of a written plea agreement. *Id.* at 26. Because that determination was predicated on the finding that the agreement was unambiguous, we did "not address the consequences if the plea agreement had contained an ambiguous term." *Id.* at 26 n 10. As we will explain, that is the question on which this case turns.

Under general principles of contract law, when the meaning of a contractual provision is disputed and the court determines that the provision is ambiguous, the factfinder may resolve the ambiguity by considering, among other things, "extrinsic evidence of the contracting parties' intent" and applying, if necessary, "appropriate maxims of construction." *Yogman v. Parrott*, 325 Or 358, 363-64, 937 P2d 1019 (1997).[8] But we do not rely on those principles of contract

---

[8] As noted above, defendant contends that, if the plea agreement is ambiguous, it should be construed in favor of defendant and against the state. That argument is apparently based on the maxim that an ambiguous provision should be construed against the party responsible for drafting its language—here, the state. *See Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 470-71, 836 P2d 703 (1992) (stating that, "when two or more competing, plausible

law to resolve this dispute, because again, plea agreements in criminal cases involve constitutional and statutory rights that "may override contractual principles." *King*, 361 Or at 648; *Heisser*, 350 Or at 23.

Particularly relevant here is the requirement that a trial court may not accept a guilty plea or proceed to sentencing without ensuring that the plea had been voluntarily and intelligently made, as discussed above. A defendant who does not understand the consequences of a plea agreement is not proceeding voluntarily and intelligently. *See Lyons*, 298 Or at 560 (guilty pleas must be "voluntary and made with knowledge of the consequences").

As explained above, during the colloquy at the sentencing hearing, the prosecutor initially questioned, given the parties' different understandings of the plea agreement, whether the parties had reached a "meeting of the minds" sufficient to reach a stipulated plea agreement. The court and eventually the defense counsel adopted that term in describing the dispute. We have noted that the term "meeting of the minds" has been described as "a much-abused metaphor" that "must not be taken too literally." *Heisser*, 350 Or at 24 (internal citations and quotation marks omitted). The "meeting of the minds" requirement, we explained, is better understood as "the requirement that there be mutual assent to the terms of the agreement." *Id*. In this context, the real concern should not have been whether there was a "meeting of the minds," but whether defendant's plea had been "voluntary and intelligently" made with knowledge of the consequences of his plea. ORS 135.390(1). In any event, under the circumstances, it was appropriate for the trial court to inquire further before proceeding to sentencing.

As noted above, each party contends that the plea agreement "unambiguously" means what the party had originally understood it to mean. Defendant contends that nothing in the agreement expressly precluded him from arguing that the consecutive sentences could not be imposed because the court had not made the findings required by

---

interpretations prove to be reasonable after all other methods for resolving the dispute over the meaning of particular words fail, then the rule of interpretation against the drafter of the language becomes applicable" (emphasis omitted)).

ORS 137.123(5), and as noted above, the Court of Appeals agreed.[9] Because the plea agreement does not expressly mention the statutory findings at all, that is one plausible interpretation. But, as we explain next, we think that the state's interpretation is also plausible.

Defendant stipulated in the plea agreement that "the state may argue for *and the court may impose*" consecutive sentences. (Emphasis added.) Although each party argues that, under *Heisser*, that provision unambiguously supports its understanding of the agreement, the emphasized wording is what distinguishes the agreement in this case from the unambiguous agreement in *Heisser*. The plea agreement in *Heisser* provided that the state "is free to seek" departure sentences, but it said nothing about whether the court could impose them. This plea agreement expressly states that "the court may impose" consecutive sentences. And, as we stated in *Heisser*, we "must give effect to all provisions of the plea agreement." 350 Or at 27. Thus, we must give effect to the provision stating that "the court may impose" consecutive sentences.

*What* effect we give to that provision is not entirely clear. The dictionary defines the word "may" as to "have power : be able"; to "have the ability or competence to : can"; or to "have permission to." *Webster's Third New Int'l Dictionary* 1396 (unabridged ed 2002). We have indicated that, unlike the term "shall"—which generally creates an obligation—"may," at least when used in a statute, "generally

---

[9] Defendant also argues that the "court may impose" provision in the plea agreement is indistinguishable from the plea agreement that we addressed in *State v. Rusen*, 369 Or 677, 509 P3d 628 (2022). We disagree. At one point in our opinion in *Rusen*, we stated that the parties had agreed that the court "could impose" consecutive sentences if it revoked the defendant's probation. *Id.* at 696. But the parties' written plea agreement in that case did not include the "could impose" provision, and this court—and the Court of Appeals—described the parties' agreement differently at various points. *See id.* at 680 (stating that the agreement was that the state "could ask for" consecutive sentences, and the defendant would "be free to ask" for concurrent sentences (internal quotation marks omitted)); *State v. Rusen*, 307 Or App 759, 761, 479 P3d 318 (2020), *rev'd*, 369 Or 677, 509 P3d 628 (2022) (stating that the parties had agreed that, upon revocation, "the state could argue for consecutive sentences and [the] defendant could argue for concurrent ones"). The precise wording of the parties' agreement in *Rusen* did not matter because neither appellate court was attempting to interpret and enforce their agreement. Rather, the appellate courts described the agreement solely to determine whether ORS 138.105(9) precluded review of the defendant's claim of sentencing error.

implies that the legislature intended to create only the authority to act." *Doyle v. City of Medford*, 347 Or 564, 570-71, 227 P3d 683 (2010); *see also Friends of Columbia Gorge v. Columbia River (S055915)*, 346 Or 415, 426-27, 212 P3d 1243 (2009) ("[I]n ordinary usage, 'shall' creates a mandatory duty, while 'may' creates only authority to act." (Internal quotation marks and brackets omitted.)).

Thus, both the dictionary definition and our prior cases suggest that the phrase "the trial court may impose" consecutive sentences can mean that the court had the *authority* to impose consecutive sentences. The state contends that, to give some effect to the parties' stipulation, that authority must mean something more than the court's already existing statutory authority to impose consecutive sentences after making the findings required by ORS 137.123(5). The "something more" in this context would treat the stipulation as either a waiver of the statutory requirement, or a stipulation to facts that would support the required statutory findings. We agree that it is plausible to read the parties' stipulation that the court "may impose" consecutive sentences to be an agreement that the trial court had the authority to impose consecutive sentences without making those findings, leaving it to the court's discretion whether it should impose consecutive sentences under the circumstances.

That understanding of the "court may impose" provision makes sense in this context. A trial court's obligation to determine that a plea is "voluntary and intelligently made," ORS 135.390(1), can involve an extensive colloquy between the court and the defendant, but it does not typically involve the presentation of witness testimony or other evidence to support findings that the trial court might be required to make at the time of sentencing. The findings that would be required for consecutive sentences under ORS 137.123(5)—that the defendant's commission of the offense "was an indication of defendant's willingness" to commit more than one criminal offense, ORS 137.123(5)(a), or that the defendant's conduct caused or created a risk of causing "greater or qualitatively different loss, injury or harm to the victim" than the harm caused by the other offense, ORS 137.123(5)(b)—could, if disputed, require the state to call

witnesses or present other evidence sufficient to allow the court to make the required findings.

Instead of requiring the state to present evidence that would support the statutory findings, a defendant could stipulate as a factual matter that the defendant's conduct demonstrated that he had been willing to commit more than one criminal offense, ORS 137.123(5)(a), or that his conduct leading to his conviction on one count had caused greater or qualitatively different harm to the victim than the harm caused by the conduct resulting in the conviction on the other count, ORS 137.123(5)(b). The stipulation that the "court may impose" consecutive sentences could be understood to be the functional equivalent of such a factual stipulation, thereby avoiding an evidentiary presentation to support the factual finding that would otherwise be required.[10] Evidence to support such a finding ordinarily would not be presented at sentencing following a plea.[11]

Accordingly, we conclude that the state's interpretation of the "court may impose" provision is a plausible reading of the text of the agreement. The next question, then, is whether the trial court—confronted at sentencing with a dispute over the meaning of a plea agreement that could plausibly be interpreted in two different ways—erred in its handling of the situation. As an initial matter, we agree that, because the trial court had an obligation at the time of sentencing to ensure that defendant's plea remained knowing, voluntary, and intelligent, the trial court appropriately

---

[10] In the trial court, the parties described the "court may impose" provision as a "waiver" of the findings required by ORS 137.123(5) for consecutive sentences when multiple convictions arise out of a continuous and uninterrupted course of conduct. We have indicated that a sentence "must be in conformity with" statutory requirements, *State v. Leathers*, 271 Or 236, 240, 531 P2d 901 (1975), and that the parties "cannot stipulate" to a sentence that is not provided by statute, *State v. McDonnell*, 329 Or 375, 386, 987 P2d 486 (1999). Because the statutes governing plea agreements do not give a prosecutor the right to require a defendant to waive the statutory provisions regarding consecutive sentences as a condition of the plea agreement, the "court may impose" provision is best understood as a shorthand way of stating that the defendant was, in effect, stipulating to a factual finding that would allow the court to impose consecutive sentences, and not a "waiver" of the statutory requirement itself.

[11] We have held that neither Article I, section 11, of the Oregon Constitution, nor the Sixth Amendment to the United States Constitution, require a jury to make the factual findings necessary for the imposition of consecutive sentences. *State v. Ice*, 346 Or 95, 204 P3d 1290 (2009).

inquired further. That inquiry ultimately led the trial court to state, in response to the two options outlined by defense counsel, that it "would interpret" the situation as showing that the parties did not have a "meeting of the minds" sufficient to result in a stipulated plea agreement, which would mean that the case would be returned to the trial docket. The Court of Appeals understood that statement to be a determination "that the parties had not reached a plea agreement" and concluded that the trial court had "erred" in making that determination. *Walsh*, 330 Or App at 619.

Assuming that the trial court erred in ruling, at least implicitly if not explicitly, that the parties had not reached an agreement on a plea, that error does not matter in this case, because of what happened next in the trial court. First, to the extent that defendant thought that the trial court had made such a ruling, defendant did not object or argue that it was erroneous. As explained above, after defense counsel described the two options that he saw—either ask the trial court to decide the dispute or allow the plea to be "taken back"—defense counsel apparently proceeded to discuss those options with defendant. After that discussion, defendant did not ask the court to decide the dispute over the meaning of the plea agreement. Instead, defendant chose to withdraw his legal argument that consecutive sentences could not be imposed because the court had not made the findings required by ORS 137.123(5), and he expressly *agreed* that the trial court could proceed to sentencing, with the court to decide in its discretion whether the sentences on Counts 1 and 4 would run consecutively or concurrently.

That sequence of events is the functional equivalent of what would have happened if the trial court had expressly ruled that the parties had not reached a plea agreement and returned the case to the trial docket, and the parties had then negotiated a new agreement that was identical to the original agreement but included an express, unambiguous stipulation to a factual basis for imposing consecutive sentences on Counts 1 and 4. If that had occurred, and defendant then asked the court to proceed to sentencing under the new agreement without objecting to the court's earlier decision to return the case to the trial docket, whether that decision

was erroneous would be immaterial and unpreserved for appellate review. Similarly, if the court then sentenced defendant to consecutive terms of imprisonment, whether the trial court erred in returning the case to the trial docket after declining to proceed to sentencing under the original ambiguous plea agreement would be both immaterial and unpreserved for appellate review.

That situation is different from what happened in *Heisser*. There, the trial court's erroneous determination that the parties had not reached a plea agreement was material because of what happened next—the case proceeded to trial, the defendant was convicted, and he was sentenced to a much longer term of imprisonment than he would have received under the plea agreement. In contrast, any trial court error in determining that the parties had not reached a plea agreement in this case was *not* material because of what happened next—the parties reached what was, in effect, a new plea agreement, and defendant was sentenced in accordance with that agreement without objection.[12]

Defendant suggests that the trial court's statement that it "would interpret" the situation to mean that the parties did not have a "meeting of the minds" sufficient to reach a stipulated plea agreement was a "threat" that coerced him into withdrawing his legal objection to the imposition of consecutive sentences. But that is essentially an argument that defendant's plea was not voluntary, and defendant did not make that contention in the trial court or in the Court of Appeals. Accordingly, that issue is not preserved for our review. *See State v. Burgess*, 352 Or 499, 508, 287 P3d 1093 (2012) ("It has long been the rule in this court that we will not address arguments that were not raised in the Court of Appeals."); *State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000). ("Generally, an issue not preserved in the trial court will not be considered on appeal.").[13]

_____

[12] If defendant did not want to proceed with sentencing under the terms of what was, in effect, a new plea agreement, the court could have allowed defendant to withdraw his guilty pleas. *See* ORS 135.365 (court may permit a defendant to withdraw a guilty plea "at any time before judgment").

[13] If defendant had preserved the issue, and if we agreed that, because of the trial court's statement, defendant's plea was not voluntary, then the proper remedy would be to remand the case for trial. But that is not the remedy defendant is requesting, or that the Court of Appeals ordered. Instead, defendant requests a

Under the circumstances, we cannot fault the trial court for seeking clarification when presented with a dispute at sentencing over the intended meaning and legal effect of the parties' written plea agreement, giving defense counsel the opportunity to discuss the options that counsel had identified with his client, and then proceeding to sentence defendant as he had requested in accordance with the revised plea agreement, the terms of which were expressly affirmed by the defendant.

## III.   CONCLUSION

In summary, we conclude that the parties' stipulation as part of their plea agreement that "the court may impose" consecutive sentences can plausibly be understood to authorize the trial court to impose consecutive sentences either without making the ORS 137.123(5) findings that it otherwise would have been required to make to impose consecutive sentences, or only if it made those findings. Given those two different, but plausible, understandings, it was appropriate for the trial court to question whether defendant had knowingly and voluntarily entered guilty pleas to two counts, and then attempt to resolve that issue before proceeding. After conferring with counsel, defendant agreed to withdraw his legal argument, thereby eliminating the ambiguity in the original plea agreement. That left the parties free to argue—and gave the trial court discretion to decide—whether consecutive or concurrent sentences should be imposed subject to the sentencing limitations specified in the plea agreement.[14] Under the circumstances, we conclude that the trial court did not err in proceeding to sentence defendant in accordance with the plea agreement.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

---

remand for resentencing after considering defendant's legal argument that consecutive sentences cannot be imposed because the court did not make one of the findings required by ORS 137.123(5). The Court of Appeals granted that request, but that would be the appropriate remedy only if the original plea agreement *unambiguously* preserved defendant's right to make his legal argument, as in *Heisser*. Because we have concluded that the plea agreement was *ambiguous*, defendant is not entitled to the remedy of a remand for resentencing based on that legal argument.

[14] Defendant does not contend on appeal that the trial court abused its discretion when it imposed consecutive sentences in this case.